IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:09CV41-V

| ARTHUR H. NORTHRUP, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Memorandum and Order |
| | ) | |
| B.L. ALBERT and | ) | |
| M. JASON GOUDELOCK, | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendants' respective Motions to Dismiss or Alternative Motions for Summary Judgment (Documents ##14,19) and all related memoranda in support and in opposition thereto. Also before the Court is a filing submitted by Plaintiff entitled, "Notice of Constitutional Question." (Document #16)

## I. Background

On July 19, 2008, Plaintiff Arthur H. Northrup, Jr. ("Northrup"), was arrested for Driving While Impaired ("DWI") and Driving While License Is Revoked ("DWLR").[1] Defendant B.L. Albert ("Trooper Albert"), Trooper with the North Carolina State Highway Patrol, made the arrest after responding to a call for assistance which was originated by Defendant M. Jason Goudelock ("Deputy Goudelock"), a deputy with the Catawba County Sheriff's Department.

While the Court must view the facts in the light most favorable to the Plaintiff Northrup, the facts probative of the officers' perspectives are also described by the individual defendants. Where

---

[1] The DWI and DWLR offenses were brought against Northrup in the Catawba County District Court, located in Hickory, North Carolina, *State of North Carolina v. Northrup, 08-CR-055717,* and were pending trial when this federal civil action was commenced. (Compl. ¶F,2)

the facts as alleged by Northrup may differ from what the defendants describe, the Court expressly notes the discrepancies. (*See* M & O at 5, Section "The facts according to Northrup ....,")

According to Deputy Goudelock:

- At or about 11:00 a.m. on 19 July, 2009[sic], [Goudelock] was working an off-duty assignment as a Deputy Sheriff with the Catawba County Sheriff's Department. [Goudelock] was in uniform and directing traffic at an event near the intersection of Grassy Creek Road and NC Highway 150 ("NC 150") in Catawba County. (Goudelock Aff. ¶3)

- While directing traffic, [Goudelock] had the westbound traffic on NC 150 stopped. [Goudelock] heard a sound like a vehicle crash and looked in the direction of the crash. [Goudelock] observed a Harley-Davidson motorcycle on its side in the roadway and drivers of other vehicles near [the] motorcycle exiting their vehicles and moving in the direction of the motorcycle. (Goudelock Aff. ¶4)

- [Goudelock] thought there had been a vehicle collision, so [he] began to walk toward the motorcycle to investigate. Before [Goudelock] could get to the motorcycle or determine what had occurred, the driver of the motorcycle remounted the motorcycle and sped off. (Goudelock Aff. ¶5)

- At that time [Goudelock] was able to observe broken amber glass similar to a turn signal lenses[sic] in the roadway. [He] did not know whether there had been any injury or the extent of any property damage. (Goudelock Aff. ¶6)

- [Goudelock] then pursued the motorcycle in [his] marked patrol car with [his] blue lights and siren activated....The motorcycle traveled at speeds of approximately 65 miles per hour in a posted 45 mile per hour zone. (Goudelock Aff. ¶7)

- It appeared that the motorcycle was leaving Catawba County and going into Lincoln County, and although [Goudelock] was in immediate pursuit of the motorcycle, [he] radioed for assistance from the North Carolina Highway Patrol. (Goudelock Aff. ¶8)

- The motorcycle pulled over in the Food Lion Shopping Center at the intersection of NC Highway 16 ("NC 16") and NC 150. (Goudelock Aff. ¶9)

- [Goudelock] approached the driver and asked if he was okay. The driver said that he was fine that he had just laid the bike down. [Goudelock] asked him for a driver's license, and he stated that he did not have a license. As [they] spoke, [Goudelock] noticed what [he] would describe as a strong odor of alcohol coming from the driver. [Goudelock] also noticed that the driver's eyes were red and glassy. [Goudelock] formed an opinion that Plaintiff was impaired. (Goudelock Aff. ¶10)

- [Goudelock] turned the investigation over to Trooper Albert upon [the latter's] arrival on the scene after sharing his description of events and opining that Plaintiff was impaired.

  (Goudelock Aff. ¶11)

According to Trooper Albert:

- At the direction of the Highway Patrol Communication Center, Trooper Albert responded to the Food Lion parking lot at the intersection of NC Highways 16 and 150 at approximately 11:40 a.m. on July 19, 2008 (Albert Aff. ¶4)

- After receiving information from Deputy Goudelock, Trooper Albert began an investigation of Northrup for driving offenses (Albert Aff. ¶6)

- Trooper Albert noticed "a moderate stale odor of alcohol" about Northrup's person (Albert Aff. ¶7)

- Northrup told Trooper Albert that "he had not had anything to drink that day," "had been drinking the night before," but "could not recall whether he had gotten drunk or not" (Albert Aff. ¶7)

- Northrup was cooperative with Trooper Albert (Albert Aff. ¶8)

- Trooper Albert conducted field sobriety tests upon Northrup, who appeared to try to follow instructions (Albert Aff. ¶8)

- Northrup agreed to take an Alco-Senser® test, a portable breath test, at the scene. [Trooper Albert] also observed that Northrup's eyes were red and glassy. When [Trooper Albert] instructed him regarding a gaze-nystagmus test, Northrup was repeatedly unable to follow [] instructions to keep his head still and follow with his eyes only. Northrup stated that he could not perform a walk and turn, one-leg-stand or balance tests due to a previous back injury. He agreed to take a finger-to-nose test but missed on 4 out of 6 attempts. He did not correctly follow instructions when asked to count backward from 47 to 29. The portable alcohol breath test revealed the presence of a sufficient quantity of alcohol concentration, together with [Trooper Albert's] other observations, [to] provide [Trooper Albert] with probable cause to believe that Northrup had committed a driving while impaired offense. Northrup was placed under arrest at the scene. (Albert Aff. ¶8)

- Trooper Albert requested the Highway Patrol Communications Center to obtain a driver license status for Mr. Northrup from the NC Division of Motor Vehicles computer. That check showed that Northrup's driver's license was revoked because of a previous driving while impaired conviction. Northrup was charged with driving while license revoked as well. (Albert Aff. ¶9)

- Trooper Albert advised Northrup that the motorcycle was subject to seizure under North Carolina law. (Albert Aff. ¶10)

- Trooper Albert requested that the motorcycle be towed and stored in accordance with N.C. GEN. STAT. § 20-28.3.(Albert Aff. ¶10)

- Northrup later refused to submit to a chemical breath test at the Catawba County Law Enforcement Center. (Albert Aff. ¶11)

- Trooper Albert took Northrup before Catawba County Magistrate F.E. Ruffy for a determination of probable cause on the charges of DWI and DWLR, whereupon Magistrate Ruffy found probable cause for both offenses. (Albert Aff. ¶12)

- As of July 19, 2008, records obtained from the N.C. Department of Motor Vehicles revealed that Arthur Henry Northrup, Jr., was not the registered or lawful owner of

- the 1995 Harley Davidson motorcycle bearing vehicle identification number (VIN) IHD4CAM16SY215824. (Gardner Aff. ¶5)
- After requesting that the motorcycle driven by Northrup be seized and towed as required by statute, Trooper Albert had no further involvement with disposition of the motorcycle. (Albert Aff. ¶14)

The facts according to Northrup are as follows:

- Northrup did not speed while driving his motorcycle on July 19, 2008. (Document #17 at 3, ¶4)
- "Plaintiff did not see the [Deputy Sheriff's car] lights flashing until turning into the shopping center ..." (Compl. ¶D(a)(2)(iii)).
- Plaintiff did not attempt "to pull off" as Deputy Goudelock exited his patrol car. Plaintiff parked the motorcycle near the store he intended to go to and "when Goudelock approached, the kickstand was down, the engine off, the keys on a D-ring on Plaintiff's pants pocket, and the helmet on the seat." (Compl. ¶D(b)(2)(ii)).
- "Plaintiff was detained [by Deputy Goudelock] where he stood and the motorcycle was parked ...." (Compl. ¶ D(a)(2)(v)).
- Deputy Goudelock did not issue a traffic citation to Plaintiff. (Compl. ¶D(a)(2)(iv)).
- Trooper Albert never saw Northrup operate his motorcycle. (Document #17 at 8, ¶3).

The DWI and DWLR charges were ultimately dismissed as a result of a successful motion to suppress made by the defense. Specifically, the motion to suppress was <u>denied</u> as to the validity of the initial stop by Deputy Goudelock but <u>granted</u> concerning the field sobriety tests administered by Trooper Albert and the request for Northrup to take the Intoxilyzer. (Document #17 / Exh. A / Hr'g Tr. 21, 33) The defense argued that, based upon Trooper Albert's testimony, the only information he possessed when he asked Northrup to submit to field sobriety tests was that there was

some "bad driving" observed by Deputy Goudelock, with the detection of "a moderate odor of alcohol" on Northrup being the only additional observation made by Trooper Albert. (Document #17 / Exh. A / Hr'g Tr. 30-32) It appears there was also some uncertainty concerning the characterization of the call for assistance received by Trooper Albert and the details relayed from Deputy Goudelock to Trooper Albert. (Document #17 / Exh. A / Hr'g Tr.30-32) In ruling, the district court judge stated:

> [W]hat I don't have in front of me right now is exactly what Trooper Goudelock told – at that time Cprl. Goudelock told this officer [Trooper Albert], and I think it would have to be for him to say that there was bad driving since he observed the driving, all of the things would have to have been related from Tpr. Goudelock to this Trooper, and I don't think there's a chain at this point in time right now of all those things, so I don't really know what happened, what this officer knew before he actually asked for the defendant to submit to a field sobriety test, and so I'm going to grant the motion.

(Document #17 / Exh. A / Hr'g Tr. 33). Due to the adverse suppression ruling, the case was dismissed upon a defense motion at the close of the State's evidence. (Document #17 / Exh. A / Hr'g Tr. 33).

In light of these events, Northrup commenced this civil action in federal court alleging violations of 42 U.S.C. §1983, 18 U.S.C. §§241 and 242, as well as 42 U.S.C. §1986, against both Trooper Albert and Deputy Goudelock.[2] The gist of Northrup's Section 1983 action is that the traffic stop by Deputy Goudelock and subsequent arrest by Trooper Albert amount to violations of his Fourth Amendment right to be free from unreasonable seizure, namely, his Fourth Amendment

---

[2] Plaintiff's causes of action are described as follows: Count 1 – Unlawful arrest and seizure of property (both); Count 2 – False statements (Goudelock); Count 3 – Conspiracy against rights, 18 U.S.C. §§ 241, 242 (both); Count 4 – Deprivation of rights under color of law, 18 U.S.C. § 242 (both); Count 5 – Failure to "stop and correct," 42 U.S.C. § 1986 (both).

right not to be detained or arrested without probable cause. Northrup also contends that the seizure of the motorcycle was unlawful. Northrup, who alleges that Defendants Albert and Goudelock "acted in concert," brings suit against Defendants in their personal capacities only.[2] (Compl. Caption) Northrup seeks monetary damages, including compensatory and punitive damages. (Compl. ¶¶G,1-6)

### III. Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U. S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U. S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In ruling on a motion for summary judgment, the Court must view the facts and inferences, in the light most favorable to the party opposing the motion for summary judgment. Celotex Corp., 477 U.S., at 325; Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). "When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate." Matsushita, 475 U.S. at 587.

---

[2] Since Northrup does not assert claims against Defendants in their official capacity, there is no need to consider whether they acted pursuant to any regulation, policy, or practice authorizing unconstitutional action. *See* Cloaninger v. McDevitt, 555 F.3d 324, 335 n. 11 (4th Cir.2009) (*citing* Jackson v. Long, 102 F.3d 722, 731 (4th Cir.1996)).

The Court finds that summary judgment in favor of both Defendants is appropriate as qualified immunity requires dismissal.

## IV. Discussion

### A. 42 U.S.C. § 1983 / Alleged Fourth Amendment Violation

Northrup contends that Deputy Goudelock had no lawful basis for the initial traffic stop and that Deputy Goudelock's statements to Trooper Albert were false. Although he does not expressly complain about the length of the stop (delay before Trooper Albert arrived), presumably, Northrup protests that as well. Northrup further contends that Trooper Albert did not have the authority to arrest him for either of the driving offenses pursuant to N.C. Gen.Stat. §20-188 because Albert did not personally observe the conduct that the charges were based upon (*i.e.*, Northrup physically driving the motorcycle).

#### 1. Qualified Immunity

Qualified immunity protects public officials from individual liability unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Generally, government officials performing discretionary functions are granted qualified immunity and are thus "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). Whether or not a police officer is entitled to qualified immunity is a question of law for the court, and when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. Willingham v. Crooke, 412 F.3d 553 (4th Cir. 2005).

A defense of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law'," and it "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines'." Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (*citations omitted*). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 544 U.S. at 201.

"Although the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." Waterman, 393 F.3d at 476 (*citing* Anderson v. Creighton, 483 U.S. 635, 640 (1987); Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992)); see also Gould v. Davis, 165 F.3d 265, 269 (4th Cir. 1998)("[T]he proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."). "A determination that a right is clearly established may be based on controlling authority in the jurisdiction in question or on a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."" Id. (*quoting* Wilson v. Layne, 526 U.S. 603, 617 (1999)).

### 2. Basis For Initial Stop

The Supreme Court's analysis in Terry v. Ohio[3] governs routine traffic stops. United States v. Meikle, 407 F.3d 670, 672 (4th Cir.2005)(*citing* Berkemer v. McCarty, 48 U.S. 420, 439 (1984)). Terry requires the Court to determine "whether the officer's action was justified at its inception, and

---

[3] Terry v. Ohio, 392 U.S. 1 (1968).

whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. (*quoting* Terry, 392 U.S. at 20.)

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996)(*citing* Delaware v. Prouse, 440 U.S. 648, 653 (1979)(Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977)). During a routine traffic stop:

> "The officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. ***When the driver has produced a valid license and proof that he is entitled to operate the car, [the driver] must be allowed to proceed on his way, without being subject to further delay by police for additional questioning***."

United States v. Rusher, 966 F.2d 868, 876 (4th Cir. 1992)(*internal citations omitted*) *(emphasis provided)*. "Any further detention for questioning is beyond the scope of the Terry stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." Id.

Here, Deputy Goudelock's impression that Northrup was speeding, in and of itself, is sufficient to warrant the initial stop. In addition, Deputy Goudelock began to follow Northrup (and only observed the alleged speeding) following what he believed to be Northrup leaving the scene of an accident in which Northrup was involved. Therefore, Goudelock possessed "reasonable suspicion," based upon articulable facts (*i.e.*, the crash, the response of the nearby motorists, the broken pieces of amber safety lights in the road, the motorcycle lying in the road on its side), that Northrup fled the scene of an accident and, in doing so, committed one or more traffic violations. Thus, the stop was justified at its inception.

Significantly, Deputy Goudelock learned at the outset of the encounter that Northrup did not have a driver's license on his person. Thus, aside from any suspicion or concern that Northrup was impaired, the continued detention of Northrup was also justified for purposes of exploring whether Northrup was a licensed driver entitled to operate the motorcycle (the motorcycle endorsement). Accordingly, the brief seizure of Northrup was reasonably related in scope to the reason for the initial stop.

### 3. Probable Cause To Arrest

The next question for the Court then is not whether there *actually* was probable cause for arrest, but whether an objective law enforcement officer could reasonably have believed probable cause to exist.[4] *See e.g.*, Gomez v. Atkins, 296 F.3d 253 (4th Cir.2002) (evaluating qualified immunity defense in connection with issuance of murder warrant where plaintiff challenged existence of probable cause) (*citations omitted*); *see also* Cloaninger v. McDevitt, 555 F.3d 324 (4th Cir. 2009). As the Fourth Circuit explains:

> In assessing whether probable cause existed ..., we must examine the totality of the circumstances **known to the officer at the time of the arrest**. We are guided in this endeavor by certain fundamental principles. First, the determination and existence of probable cause is a practical, nontechnical conception, and it involves factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Furthermore, in determining whether probable cause exists, the evidence must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
>
> Probable cause will be found to exist when the facts and circumstances within an officer's knowledge-or of which he possesses reasonably trustworthy information-are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed. While probable cause demands more

---

[4] For this reason, the fact that Northrup's state case was ultimately dismissed is not determinative of liability under Section 1983.

than a mere suspicion, ... evidence sufficient to convict is not required.

Gomez, 296 F.3d at 261-62 (*emphasis added; internal quotation marks and citations omitted*). The Court looks to the facts and circumstances known at the moment of Northrup's arrest. *See e.g.,* Wilkerson v. Hester, 114 F.Supp.2d 446, 457 (W.D.N.C.2000).

Considering the totality of the circumstances known to Deputy Goudelock and shared with Trooper Albert, the Court finds it was objectively reasonable for the officers to conclude that probable cause existed for Northrup's arrest for both charged offenses. Deputy Goudelock observed Northrup driving the motorcycle. Similarly, through his own independent investigation subsequent to the traffic stop, Trooper Albert determined that Northrup was impaired and that he was not licensed to drive. Thus, it was objectively reasonable to believe that probable cause existed for his arrest. Indeed, Magistrate Ruffy, who also had an opportunity to personally observe Northrup shortly after his arrest, also reviewed the facts as presented and reached the same conclusion.

On this record, the Court finds as a matter of law that Northrup's specific allegation that Trooper Albert lacked probable cause for his arrest does not constitute a violation of "a clearly established constitutional right." *See* Gooden v. Howard County, Maryland, 954 F.2d 960, 965-66 (4th Cir. 1992) (factual disputes did not preclude grant of summary judgment in favor of defense based upon qualified immunity where there was no genuine issue of fact regarding the reasonableness of the officers' perception). The Court similarly finds that there are no *relevant* or *material* facts in dispute. At best, the facts presented by Plaintiff fall within a gray area as opposed to an alleged violation of a bright line rule of law. Northrup's Section 1983 claim is barred by qualified immunity.

**B. 18 U.S.C. §§ 241, 242 / Conspiracy Against Rights & Deprivation of Rights Under Color Of Law**

The plaintiff also seeks relief under 18 U.S.C. §§ 241, 242 – essentially the criminal analogues of 42 U.S.C. § 1983 – which make it a crime to willfully deprive someone of his constitutional rights or to become involved in a conspiracy to do so. These provisions, however, do not give rise to a civil action for damages, and neither the plaintiff nor this Court has the authority to issue a criminal complaint. *See* Maine v. Taylor, 477 U.S. 131, 136 (1986). Therefore, summary judgment is appropriate as to these claims as well.

**C. 42 U.S.C. § 1985(3) / Alleged Conspiracy To Interfere With Civil Rights**

Section 1985(3) provides a cause of action where two or more persons conspire to interfere with an individual's civil rights. To prevail on such a claim, a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who were motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985).

The Fourth Circuit applies a "relatively stringent standard for establishing section 1985 conspiracies." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Under that strict standard, the Fourth Circuit "has rarely, if ever found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." Id. Moreover, the Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence

of concrete supporting facts." Id.

Conclusory allegations are the 'meat and potatoes' of Northrup's Complaint. The sharing of information by law enforcement officers in this case does not constitute a conspiracy to interfere with Northrup's civil rights. Plaintiff's Section 1985(3) claim does not survive summary judgment either.

**D. Seizure Of Motorcycle Northrup Was Driving**

The seizure of the Harley Davidson motorcycle Northrup was driving at the time of his arrest was lawful in that the motorcycle was seized as related to a DWI offense ("a driving while impaired seized vehicle") pursuant to N.C. Gen. Stat. § 20-28.3(b). (Albert MSJ / Gardner Aff. Exh. A). Under N.C. Gen. Stat. §20-28.3:

> "A motor vehicle that is driven by a person who is charged with an offense involving impaired driving is subject to seizure if:
> (1) At the time of the violation, the drivers license of the person driving the motor vehicle was revoked as a result of a prior impaired driving license revocation as defined in G.S. § 20-28.2(a); or
> (2) At the time of the violation:
> > a. The person was driving without a valid drivers license, and
> > b. The driver was not covered by an automobile liability policy.

N.C. Gen. Stat. § 20-28.3(a)(2011).

Assuming one or more of the criteria are met, the arresting officer is charged with seizing the vehicle and having it impounded. Under the statute, seizure and impoundment is mandatory. N.C. Gen. Stat. § 20-28.3(b) ("the officer *shall* seize the motor vehicle ....").

In this case, Northrup could not produce a driver's license and performed poorly during the field sobriety tests Trooper Albert conducted. Northrup was charged with Driving While

Impaired and Driving While License Is Revoked. Trooper Albert discovered that the reason Northrup did not have a driver's license was because his license had already been revoked due to a prior conviction for Driving While Impaired. (Albert Aff. ¶¶9,10 / Gardner Aff. Exh. A / Spence Aff. ¶5, Exh. B) For this reason, the seizure of the motorcycle Northrup was driving was in accordance with Section 20-28.3.

Moreover, Northrup's due process claim lacks merit. Northrup asserts that the North Carolina statute, N.C. GEN. STAT. § 20-28.3, runs afoul of his due process rights and the just compensation clauses of the Fifth Amendment to the Constitution, made applicable to the States by the Fourteenth Amendment and N.C.G.S. § 20-7. Northrup represents:

> "Administrative action obtained the release of the motorcycle conditioned upon payment of towing and storage fees, which at the time exceeded $700 and went up $10 per day, money Plaintiff did not have, although he provided $300 to pay on the fees. The release process took 40 days because the State had not updated the Title and Registration information since prior to 2001 when the motorcycle was purchased – the State was still showing the previous owner, but finally admitted the previous Title had been turned in, and acknowledged the correct Title and Registration information."

(Compl. ¶F,3) According to official records from the DMV, the motorcycle was not registered to Northrup as of July 19, 2008. (Gardner Aff. ¶5) Trooper Albert reasonably relied on the information concerning ownership available to him at the time of Northrup's arrest. There is no evidence as to who was responsible for failing to follow through with correct titling and registration of the motorcycle at the time of its purchase in 2001, but apparently it was neither Goudelock nor Trooper Albert. The subsequent discovery that the records were not up-to-date does not entitle Northrup to monetary damages for the motorcycle's impoundment.

Northrup concedes that he received notice of the procedure for release of the motorcycle by a "Non-Defendant Owner."[5] In fact, as the individual Defendant charged with DWI, Northrup was not eligible to pursue release of the motorcycle because release may only be requested by a "Non-Defendant Owner," "Lienholder," or "Insurance Company" under Section 20-28.3. Consequently, it is undisputed that Northrup received adequate process. The failure of Northrup or third-parties to act upon such notice in timely fashion is not actionable against Trooper Albert or Deputy Goudelock.

## V. Conclusion

**IT IS, THEREFORE, ORDERED** that Defendants' Motion For Summary Judgment is **GRANTED** as to all causes of action. Plaintiff's claims against both of the Defendants are hereby dismissed.

Signed: December 20, 2011

Richard L. Voorhees
United States District Judge

---

[5] The statutory Notice of Impoundment reads in pertinent part:

> TO NON-DEFENDANT OWNER: PENDING TRIAL OF THE DEFENDANT, THE VEHICLE MAY BE RELEASED. TO REQUEST RELEASE OF THE VEHICLE, YOU WILL NEED TO COMPLETE A NON-DEFENDANT OWNER'S PETITION / APPLICATION FOR RELEASE OF SEIZED MOTOR VEHICLE ACKNOWLEDGEMENT STATE'S CONSENT TO RELEASE (AOC-CR-330) OBTAINED FROM THE CLERK OF SUPERIOR COURT OF THE COUNTY IN WHICH THE CHARGES ARE PENDING AGAINST THE DEFENDANT. THE COMPLETED FORM MUST BE TAKEN TO THE CLERK'S OFFICE.

(Gardner Aff. Exh. A)